# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JEROME PERKINS,           )
                     )
       Plaintiff,        )
                     )     **No. 3:19-cv-00959**
v.                    )     **Judge Trauger**
                     )
RUSSELL WASHBURN, et al.,   )
                     )
       Defendants.     )

## <u>MEMORANDUM</u>

Jerome Perkins, a former inmate at the Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee,[1] filed a *pro se* Complaint against CoreCivic, TTCC, Warden Russell Washburn, Sergeant Alicia Gross, Sergeant Carter, Mrs. Roo, Mrs. Grossman, Mr. Davis, Jr., Officer Gregory, Sergeant Lestor, and Lieutenant Holmes pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) He also filed an application to proceed in this court without prepaying fees and costs. (Doc. No. 2.) The case is before the court for a ruling on the application and for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I.    Application for Leave to Proceed *in Forma Pauperis*

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application to proceed as a pauper and certified trust account statement reflect that he cannot pay the full filing fee in advance. (*See* Doc. No. 2). Accordingly,

---

[1] Perkins currently resides at South Central Correctional Facility in Clifton, Tennessee. (Doc. No. 5.)

the application will be granted, and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. Initial Review of the Complaint

Under the PLRA, the court must review and dismiss any prisoner Complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A.

### A. Standard of Review

To determine whether a Complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court must (1) view the Complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true unless they are entirely without credibility. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The court determines whether those factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Iqbal*, 556 U.S. at 681 (2009)), that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

"*Pro se* Complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not

2

exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

**B.      Factual Background**[2]

The Complaint first alleges Sergeant Gross abused her authority as a prison staff member when she told the plaintiff that she was "going to get [him] F up" and then paid off gang members to assault him. (Doc. No. 1 at 6, 9; Doc. No. 4 at 1.) As a result, on July 9, 2019, gang member inmates allegedly assaulted the plaintiff and stole his property. (*Id*.) The gang members additionally threatened to kill the plaintiff and told him to stay out of the prison compound. (*Id*.) The Complaint alleges that the plaintiff notified TTCC staff that he had been attacked and robbed because of Sergeant Gross. However the staff did allegedly not care. They told the plaintiff it was his fault and refused to protect him. (*Id*. at 2.) Moreover, they punished the plaintiff by handcuffing him for five hours, forcing him to eat with his face, and making him sleep on the floor in the intake area for three days. (*Id*. at 2; Doc. No. 1 at 12.) Sergeant Lopez and Sergeant Roach allegedly put the plaintiff in a cell with another rival gang member and told him to "beat [the plaintiff's] ass." (*Id*. at 13.) Lopez took the plaintiff's remaining personal property and legal papers and gave him no receipt. (*Id*. at 12-13.)

On July 11, 2019, the plaintiff wrote and spoke to Warden Russell Washburn about Sergeant Gross, the assault, and the loss of property, but he received "no help at all." (*Id*. at 6.) The plaintiff also notified TTCC staff that gang members had threatened his life if he returned to

---

[2] The plaintiff's factual allegations are derived from the Complaint and a signed factual supplement. (Doc. No. 1; Doc. No. 4.)

3

the compound. (*Id*. at 8.) The Complaint alleges TTCC did not conduct an investigation and Chief of Security Howard and Warden Washburn denied the plaintiff's grievances regarding lost property. (*Id*. at 5, 8-9.) The plaintiff was then placed in segregation for three and one-half months, in part because Sergeant Lestor notified Vice Lords gang members that the plaintiff was trying to report them for his assault. (*Id*. at 8, 10, 13; Doc. No. 4 at 2.) The plaintiff claims he was neglected in segregation by TTCC officers who deemed it "up to them" whether he was fed, and he alleges that some days he did not eat or shower. (Doc. No. 4 at 2.) During this time, the segregation unit manager, Mrs. Roo, allegedly refused to see or assist the plaintiff based on the excuse that the plaintiff had threatened to rape her. (*Id*.; Doc. No. 1 at 10.) Sergeant Lopez, Sergeant Carter, Corrections Officer Wilson, and Mrs. Roo allegedly either refused to give the plaintiff grievance forms or threw them away; refused to give the plaintiff inmate hygiene kits; and refused to provide the plaintiff access to a telephone to communicate with counsel. (*Id*. at 13.) In addition, Sergeant Lopez allegedly stole the plaintiff's remaining jewelry. (*Id*. at 12.)

The Complaint alleges that prison officials subsequently ignored the plaintiff's requests for protection from the ongoing threat of violence from gang members, and the prison staff pressured the plaintiff to "go back out . . . to the compound." (*Id*. at 8-9, 13.) When he refused to do so out of concern for his safety, prison officials punished him. (*Id*.) TTCC wrote the plaintiff up for refusing a cell assignment. (*Id*. at 9.) The Complaint alleges that prison counselor Mrs. Perkins told the plaintiff that "they do not protect ex-gang member[s] or gang member[s] if [their] life is in danger here at Trousdale Prison." (*Id*. at 9.) Mrs. Perkins asserted that "it's not their job to protect" such inmates, and she placed the blame on the plaintiff for having once been friends with the inmates Sergeant Gross paid to harm him. (*Id*.) The plaintiff believes that CoreCivic "let this happen" to him and has not provided a proper response. (*Id*. at 6.)

The Complaint also contains allegations about other actions of TTCC staff. These include allegations that Sergeant Carter did not feed the plaintiff one day because he refused to sign a write-up; that Officer Gregory said she was going to get the plaintiff robbed by other inmates and made this possible by repeatedly leaving the plaintiff's cell door open; that Sergeant McCarthy and Officer Blakeman allowed inmates to rob each other; and that Lieutenant Holmes put a Crips gang member in the plaintiff's cell in order to watch the two inmates fight and then allowed the fight to occur. (*Id*. at 4, 10.) The Complaint also alleges that TTCC staff addressed the plaintiff in a disrespectful manner by using racial slurs (including the "N-word") and other crude insults. (*Id*. at 10-12.)

Finally, the Complaint includes several allegations regarding medical care at TTCC. First, the plaintiff alleges that TTCC medical staff denied him medical care for a broken shoulder and seriously injured neck, including failing to give any treatment for pain. (*Id*. at 11.) Second, he alleges that Mrs. Grossman denied him access to medical care after he was bitten by another inmate, resulting in sickness and weight loss. (*Id*.) Finally, the Complaint alleges that, after the fight arranged by Lieutenant Holmes, the plaintiff's verbal and written requests for medical care to address severe concussion symptoms, including headache and loss of vision, were refused. (*Id*. at 15.)

Liberally construing the Complaint in plaintiff's favor, the plaintiff brings claims against CoreCivic, TTCC, Warden Washburn, Sergeant Gross, Sergeant Carter, Mrs. Roo, Mrs. Grossman, Mr. Davis, Jr., Officer Gregory, Sergeant Lestor, and Lieutenant Holmes under § 1983 concerning loss of property, conditions of confinement, failure to protect, retaliation, and deliberate indifference to a serious medical need. He seeks compensatory damages for neglect and pain and suffering in the amount of $100,000 from CoreCivic and TTCC, $50,000 from Gross,

5

$10,000 from Washburn, and $5,000 each from Carter, Roo, Grossman, Davis, Jr., Gregory, Lestor, and Holmes. (*Id.* at 7, 10.)

### C.  Analysis

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

#### 1.  Claims Against TTCC

As an initial matter, TTCC is not a proper defendant to this action.[3] Section 1983 creates a cause of action only against persons acting under color of state law. 42 U.S.C. § 1983. "For purposes of § 1983, 'person' includes individuals and 'bodies politic and corporate.'" *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978)). The TTCC "is a building, 'not a person or legal entity subject to suit under 42 U.S.C. § 1983.'" *Plemons v. CoreCivic Admin. Headquarters*, No. 3:18-cv-00498, 2018 WL 4094816, at *3 (M.D. Tenn. Aug. 28, 2018) (quoting *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under § 1983)). Accordingly, the plaintiff's claims against TTCC will be dismissed.

---

[3] At times the plaintiff conflates CoreCivic and TTCC or refers to these parties as one entity (e.g., "CCA CoreCivic Trousdale Turner"). However, there are indications in the Complaint to support an inference that the plaintiff conceived of CoreCivic and TTCC as two parties, and the court interprets the Complaint in this manner to give the plaintiff the benefit of the doubt.

6

### 2.    Personal Property Claims

The Complaint alleges that TTCC staff either took the plaintiff's personal property or allowed it to be taken by others. The Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. *Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *5 (M.D. Tenn. Mar. 25, 2020). However, the United States Supreme Court has held that a plaintiff's loss of property at the hands of a state employee is not a violation of due process if the state affords a means to resolve the alleged loss. *Parratt v. Taylor,* 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). Where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a cognizable due process claim. *Id.* at 543-44. Accordingly, a plaintiff "must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995)). A prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *Id.* (citing *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985)).

The Sixth Circuit Court of Appeals has held that Tennessee's statutory remedy for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *Woodard*, 2020 WL 1469886, at *5 (citing *Brooks*, 751 F.2d at 199). Here, the plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. The Complaint alleges that the plaintiff complained about his missing property to prison officials and filed grievances regarding the matter that were dismissed. (Doc. No. 1 at 5, 9.) Thus, because there appear to have been adequate state post-deprivation remedies available to the plaintiff, his claims concerning lost or taken property must be dismissed. *See, e.g., Woodard*, 2020 WL 1469886, at

*5 (dismissing due process claim regarding property loss where plaintiff failed to allege inadequate post-deprivation remedies and alleged complaining to officials and filing grievances).

### 3. Claims Against CoreCivic

The plaintiff brings several claims against CoreCivic. As "the private entity contracted to manage [the] TTCC," *Shallenberger v. CoreCivic - Trousdale Turner Corr. Ctr.*, No. 3:19-cv-00900, 2020 WL 869984, at *3 & n.1 (M.D. Tenn. Feb. 21, 2020) (citing *Plemons*, 2018 WL 4094816, at *3 & n. 1), CoreCivic is "a private corporation that performs the traditional state function of operating a prison." *Gennoe v. Washburn*, Case No. 3:19-cv-00478, 2019 WL 5693929, at *5 (M.D. Tenn. Nov. 4, 2019) (citations omitted). Accordingly, CoreCivic is subject to suit under Section 1983. *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Thus, CoreCivic "cannot be held liable under a theory of *respondeat superior*." *Street*, 102 F.3d at 818; *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). The plaintiff must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of CoreCivic directly caused the violation. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)); *Braswell*, 419 F. App'x at 627.

First, liberally construing the Complaint and drawing all reasonable inferences in the plaintiff's favor, the court finds that he alleges a colorable Eighth Amendment claim that TTCC officers failed to protect him because of a policy or custom, fairly attributable to CoreCivic, of

8

declining or discouraging protection of current or former gang members from violence. The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"); *Stanton v. Joyner*, No. 3:19-cv-00270, 2020 WL 1042018, at *2 (M.D. Tenn. Mar. 4, 2020). Accordingly, the Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). A failure-to-protect claim has an objective and subjective component. For the objective component, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective component, the plaintiff must show that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster*, 749 F.3d at 446).

The Complaint alleges that CoreCivic employees – specifically including Sergeants Gross, Lestor, Lopez, and Roach, Lieutenant Holmes, Officer Gregory, and Mrs. Perkins – were aware of direct threats to the plaintiff from gang members and disregarded the risk. Indeed, the plaintiff alleges several of these TTCC officers facilitated attacks on him. The Complaint ties this alleged widespread disregard for the plaintiff's safety to CoreCivic by alleging that Mrs. Perkins revealed to the plaintiff that TTCC staff "do not protect ex-gang member[s] or gang member[s] if [their]

9

life is in danger here at Trousdale Prison" because "it's not their job." (Doc. No. 1 at 9.) Further, viewing the allegations of the Complaint in the plaintiff's favor, the plaintiff alleges that he informed Warden Washburn about at least some of these dangerous circumstances but received no assistance. The court concludes that, at this stage, the plaintiff's allegations adequately state an Eighth Amendment failure-to-protect claim against CoreCivic. Were the plaintiff facing a motion to dismiss, his burden of proof would be higher. However, the plaintiff faces a "lower burden . . . to overcome" at the PLRA screening stage. *Vick v. CoreCivic*, 329 F. Supp. 3d 426, 440, 446 (M.D. Tenn. 2018). Accordingly, while the plaintiff will bear the burden of supporting his allegations with additional evidence regarding CoreCivic policy or custom as this case progresses, the court will allow this claim to proceed for further development.

Next, liberally construing the Complaint, the plaintiff alleges retaliation by CoreCivic. The First Amendment protects a prisoner's right to be free from retaliation for engaging in constitutionally protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Plemons*, 2018 WL 4094816, at *5. To state a First Amendment retaliation claim, a plaintiff must satisfy the following three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 394).

The Complaint alleges that the plaintiff reported the attack arranged by Sergeant Gross to TTCC staff and sought protection from an ongoing threat from gang member inmates. For the purpose of initial review, the court concludes that these alleged activities – reporting a gang attack and seeking protection from unsafe living conditions – constitute protected conduct. *Plemons*,

2018 WL 4094816, at *5; *Gennoe*, 2019 WL 5693929, at *6; *see also Maben*, 887 F.3d at 265 ("Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form.") (citations omitted). As to the second element, the plaintiff alleges that, in response to this protected activity, he was subjected to a variety of harsh treatment, including TTCC staff physically restraining him, forcing him to eat with his face, and making him sleep on the floor in the intake area for three days; putting him in a cell with another gang member who was given instructions to "beat [the plaintiff's] ass" (Doc. No. 1 at 13); stealing his property and legal papers; revealing to gang members that the plaintiff was trying to report them for his assault; refusing to accept his grievances; refusing to provide access to a telephone to communicate with counsel; leaving his cell door open so he could be robbed; actively encouraging other gang members to fight him; and pressuring him to go back onto the compound without protection. Taking these allegations as true, as required at this stage in the proceedings, the court concludes that these circumstances constitute adverse actions that would "deter a person of ordinary firmness" from continuing to engage in the alleged protected conduct. *Maben*, 887 F.3d at 264; *Gennoe*, 2019 WL 5693929, at *6. The allegation that CoreCivic staff sought to "punish" the plaintiff (Doc. No. 4 at 2) satisfies the third element. *Plemons*, 2018 WL 4094816, at *5.

Finally, the court finds that these allegations are closely related to the alleged CoreCivic policy underlying the failure-to-protect claim. Based upon the Complaint, it is reasonable to infer at this stage of the case that the alleged CoreCivic policy or custom of not protecting inmates who are gang members or former gang members from violence also underlies alleged acts of retaliation in response to the plaintiff's attempt to complain about that very policy or custom. Accordingly,

the court concludes that, at this early juncture, the plaintiff has sufficiently stated a retaliation claim against CoreCivic.

However, the court does not find that the Complaint has sufficiently alleged that deliberate indifference to the plaintiff's serious medical needs is attributable to a policy or custom of CoreCivic. "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle*, 429 U.S. at 104, 105) (internal quotation marks omitted). "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 104).

"A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citations and internal quotation marks omitted).

12

For the subjective component, a plaintiff must allege that an official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[e]w the inference." *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 837). "[N]egligence or negligent medical treatment are not actionable theories of liability under 42 U.S.C. § 1983." *Boldon v. Claiborne Cty. Det. Ctr.*, No. 3:16-CV-441-TWP-HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing *Daniels v. Williams*, 474 U.S. 327, 328-331 (1986)); *see also Estelle*, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Darrah*, 865 F.3d at 372 (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Finally, to set forth a viable claim for the denial of medical care, a plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus–X*, 175 F.3d at 401.

The Complaint alleges that the plaintiff requested, and was denied, medical care by CoreCivic staff on several occasions, including when he (a) had a broken shoulder/seriously injured neck with untreated pain; (b) received a concussion resulting in severe headache and loss of vision; and (c) was bitten through the skin on his arm, hands, wrist, and shoulder, leading to sickness and weight loss. (Doc. No. 1 at 11, 15.) The court assumes that these conditions are sufficiently serious to satisfy the objective component of the deliberate indifference analysis for the purpose of initial review. Liberally construed, the Complaint also alleges that CoreCivic personnel were aware of the plaintiff's serious medical needs and disregarded them, thereby

13

satisfying the subjective component. Critically, however, the Complaint does not sufficiently allege that CoreCivic had a policy or custom of denying necessary medical care to inmates. Furthermore, the Complaint does not sufficiently tie the alleged denial of medical care for these needs to TTCC's alleged unconstitutional policy regarding gang members and violence. Thus, on the facts presented, the court may not infer that the deliberate indifference is an extension of that alleged policy. Accordingly, the plaintiff's claim against CoreCivic for deliberate indifference to serious medical needs must be dismissed.

Nor does the court find that the Complaint states an Eighth Amendment conditions of confinement claim against CoreCivic separate from the alleged failure to protect claim. The Constitution does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, the Eighth Amendment does impose an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care to guarantee prisoner safety. *Farmer*, 511 U.S. at 832; *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). A claim that prison officials have failed to meet this obligation requires: (1) a "sufficiently serious" deprivation that falls below a "minimal civilized measure of life's necessities," and (2) "deliberate indifference to inmate health or safety" on the part of a prison official. *Hamby v. Gentry*, No. 3:12-CV-01296, 2013 WL 3315494, at *5 (M.D. Tenn. July 1, 2013) (quoting *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006)). Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment

14

conditions of confinement claim. *Chaffins v. Lindamood*, No. 1:17-cv-00061, 2017 WL 3130558, at *3 (M.D. Tenn. July 24, 2017).

The Complaint alleges certain substandard aspects of the plaintiff's confinement at TTCC, including that some days the plaintiff did not eat or shower; TTCC officials directed racial slurs and other insults at the plaintiff; and TTCC staff refused to give the plaintiff hygiene kits. However, the Complaint does not, as required under § 1983, allege that these conditions arose as the result of any CoreCivic policy or custom. Rather, the Complaint merely alleges that these conditions were imposed by different TTCC personnel at different times. Accordingly, the plaintiff's conditions of confinement claim against CoreCivic must also be dismissed.

To the extent that the Complaint could be read to assert a due process claim based upon the fact or length of plaintiff's segregation, the court finds that such claim must also be dismissed. Inmates do not have a liberty interest in a particular security classification or in freedom from segregation. *Botello*, 2018 WL 358631, at *2 (citing *Miller v. Campbell*, 108 F. Supp. 2d 960, 963 (W.D. Tenn. 2000)). The Supreme Court has held that a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or will impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995); *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Here, the plaintiff

15

alleges that he was placed in segregation for approximately three months after gang members were informed that the plaintiff reported them for attacking him. These are not "extreme circumstances" that would support a finding that the plaintiff's segregation imposed hardships that are atypical and significant in relation to the ordinary incidents of prison life. *See, e.g.*, *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that a prisoner's alleged "61-day stay in administrative segregation" was not "atypical and significant"); *Chaffins*, 2017 WL 3130558, at *3 (holding eleven-month period of administrative segregation did not constitute an "atypical and significant hardship"). Nor does the plaintiff allege that his confinement in segregation impacted the length of his sentence. Accordingly, the plaintiff fails to state a due process claim against CoreCivic.

### 4. Claims Against Individual Defendants

Finally, the plaintiff sues Warden Washburn, Sergeant Gross, Sergeant Carter, Mrs. Roo, Mrs. Grossman, Mr. Davis, Jr., Officer Gregory, Sergeant Lestor, and Lieutenant Holmes in their official and individual capacities.

#### a. Official Capacity Claims

Official capacity claims are equivalent to claims against a defendant's employer. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent"); *Gennoe*, 2019 WL 5693929, at *5 (citing *Galloway v. Swanson*, No. 5:09CV02834, 2012 WL 646074, at *8 (N.D. Ohio Feb. 28, 2012) ("An official capacity claim against an employee of a private corporation is viewed as a claim against the corporate entity itself."), *aff'd sub nom. Galloway v. Anuszkiewicz*, 518 F. App'x 330 (6th Cir. 2013)). When the employer is separately named as a defendant, official capacity claims against the individual defendants are redundant and will be dismissed. *See Sagan v. Sumner Cty. Bd. of Educ.*, 726 F. Supp. 2d 868, 876 (M.D. Tenn. 2010) (concluding that "a claim against

an individual in her official capacity is tantamount to a claim against the employer and where, as here, the employer is also sued, the official capacity suit against the employee is simply redundant and may be dismissed") (citation omitted)); *see also, e.g., Jackson v. Shelby Cty. Gov't*, No. 07-6356, 2008 WL 4915434, at *1 (6th Cir. Nov. 10, 2008) (noting that claims brought against sheriff in his official capacity "mirror[ed] the claims against the County, and [we]re therefore redundant"); *Scott v. Tipton Cty.*, No. 10-2616, 2011 WL 2515976, at *3-4 (W.D. Tenn. June 22, 2011) (noting that "the general practice of district courts in this circuit" is to "dismiss official capacity claims where the local governmental entity is already a party," collecting cases, and dismissing the plaintiff's official capacity claims as redundant) (internal quotation marks and citations omitted).

Here, Warden Washburn, Sergeant Gross, Sergeant Carter, Mrs. Roo, Mrs. Grossman, Mr. Davis, Jr., Officer Gregory, Sergeant Lestor, and Lieutenant Holmes appear to be employees of CoreCivic, the private corporation contracted to operate the TTCC. *See Gennoe*, 2019 WL 5693929, at *5 (reaching similar conclusion about Warden Washburn and other TTCC officers) (citing *Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *3 (M.D. Tenn. Apr. 23, 2018)). Regarding the official capacity claims against them, these defendants therefore stand in the shoes of CoreCivic. Because the plaintiff has separately brought the same claims against CoreCivic, the official-capacity claims against Warden Washburn, Sergeant Gross, Sergeant Carter, Mrs. Roo, Mrs. Grossman, Mr. Davis, Jr., Officer Gregory, Sergeant Lestor, and Lieutenant Holmes will be dismissed.

### b.    Individual Capacity Claims

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir.

2012); *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") Because there is no *respondeat superior* liability under § 1983, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hall*, 2020 WL 1061885, at *5 (citing *Hays*, 668 F2d at 874). Supervisory officials who are aware of the unconstitutional conduct of their subordinates but fail to act generally cannot be held liable in their individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

### i.     Warden Washburn

The Complaint contains two allegations concerning Warden Washburn. The plaintiff alleges, first, that the plaintiff complained to Washburn about Sergeant Gross and the attack by gang members but that Washburn did not respond, and, second, that Warden Washburn denied grievances filed by the plaintiff concerning his property. (Doc. No. 1 at 6, 9.) However, "[a] failure to take corrective action in response to an inmate grievance or Complaint does not supply the necessary personal involvement for Section 1983 liability." *Woodard*, 2020 WL 1469886, at *5 (citations omitted). To the extent the plaintiff seeks to impose liability on Washburn because he holds a supervisory position, there is no allegation that Washburn encouraged or directly participated in any of the alleged constitutional violations. The implication that Washburn may have failed to act in a corrective fashion is insufficient to state a claim for individual liability. Thus, the individual capacity claim against Warden Washburn must be dismissed.

18

ii. **Sergeant Gross, Lieutenant Holmes, and Sergeant Lestor**

The Complaint alleges that Sergeant Gross, Lieutenant Holmes, and Sergeant Lestor personally failed to protect the plaintiff from the danger posed by gang member inmates. Individual prisoner officers have an affirmative duty under the Eighth Amendment to protect inmates from violence perpetrated by other prisoners, including the right be free "from violence at the hands of other prisoners." *Bishop*, 636 F.3d at 766. Accordingly, the Constitution requires them to "take reasonable measures to guarantee the safety of the [plaintiff]." *Farmer*, 511 U.S. at 832. The Complaint alleges that Gross personally arranged for the plaintiff to be physically attacked by gang member inmates. The Complaint further alleges that Holmes personally put a gang member in the plaintiff's cell so they would fight, and Holmes then refused to intervene to stop the fight or act to move the plaintiff out of the cell. Finally, the Complaint alleges that Sergeant Lestor informed Vice Lords gang member inmates who were making ongoing threats against the plaintiff that the plaintiff was trying to report them for the July 9, 2019, attack. For purposes of initial review, each of these allegations satisfies both the objective and subjective components of an individual Eighth Amendment failure to protect claim. That is, the plaintiff has sufficiently alleged both that he was placed in conditions posing a substantial risk of serious harm, and that each individual defendant knew of and disregarded the excessive risk to the plaintiff's health and safety. *Bishop*, 636 F.3d 766-67. These claims may therefore proceed for further development.[4] *See, e.g.*, *Plemons*, 2018 WL 4094816, at *4 (concluding that plaintiff had stated individual capacity claim against TDOC defendant for failing to protect him from being beaten by prison gang members).

---

[4] The Complaint contains factual allegations that Sergeant Lopez and Sergeant Roach also arranged an attack on the plaintiff. (Doc. No. 1 at 13.) However, the plaintiff does not identify these officers as defendants in this action. If the plaintiff desires, subject to the Federal Rules of Civil Procedure and Local Rules of Court, he may file a motion to amend the Complaint to add individual-capacity failure-to-protect claims against these officers.

19

### iii. Remaining Defendants

The Complaint makes several allegations against the remaining individual defendants, most of which fail to state claims under § 1983. First, the Complaint alleges that Mr. Davis, Jr. and Mrs. Grossman used racial slurs toward the plaintiff. However, the occasional use of racial slurs – while not condoned by the court and wholly unacceptable in civil society – does not state a constitutional claim. *See Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (quoting *Corsetti v. Tessmer*, 41 F. App'x 753, 755-56 (6th Cir. 2002) (explaining that the occasion use of racial slurs, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (noting that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"). Second, Sergeant Carter is accused of withholding food from the plaintiff for one day. This allegation is insufficient to state a conditions of confinement claim because the plaintiff does not allege any injury or harm. *Chaffins,* 2017 WL 3130558, at *3. Third, Officer Gregory is alleged to have left the plaintiff's cell door open while he was not present, leading to the theft of the plaintiff's property. This claim regarding the loss of personal property must be dismissed. *See* Section II.C.2, *supra*. Finally, the Complaint alleges that Mrs. Roo did not provide assistance to the plaintiff while he was in segregation based on the excuse that the plaintiff tried to rape her. However, as discussed, a failure to take corrective action "does not supply the necessary personal involvement for Section 1983 liability." *Woodard*, 2020 WL 1469886, at *5 (citations omitted).

Nevertheless, the court finds that the plaintiff does state an individual claim against Mrs. Grossman. Specifically, the Complaint alleges that Mrs. Grossman deliberately denied the plaintiff medical care after another prisoner bit him through the skin on his arm, hands, wrist, and shoulder.

Here, the plaintiff has satisfied the objective and subjective components of a deliberate indifference to serious medical need claim by alleging that Mrs. Grossman was aware of a sufficiently serious medical need (numerous bites causing wounds, illness, and weight loss) and chose to disregard it. The court will therefore allow this claim to proceed for further development.[5]

## III.     Conclusion

For the reasons explained above, the plaintiff's *in forma pauperis* application will be granted. The plaintiff's failure-to-protect claim will proceed against CoreCivic, Sergeant Gross in her individual capacity, Lieutenant Holmes in his individual capacity, and Sergeant Lestor in his individual capacity. The plaintiff's claim for retaliation under the First Amendment will proceed against CoreCivic. The plaintiff's claim for deliberate indifference to serious medical need will proceed against Mrs. Grossman in her individual capacity. All other claims will be dismissed. This case will be referred to the Magistrate Judge for further proceedings.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

---

[5] The court notes that the plaintiff does not bring individual capacity claims concerning any other alleged denials of medical care described in the Complaint. Should the plaintiff wish to do so, consistent with the Federal Rules of Civil Procedure and Local Rules of Court, he may move to amend the Complaint to add individual capacity claims against any TTCC employees personally involved in other denials of medical care alleged in the Complaint.