UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEROME PERKINS, | |
| Plaintiff, | Case No. 3:19-cv-00959 |
| v. | Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |
| RUSSELL WASHBURN et al., | |
| Defendants. | |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises from pro se Plaintiff Jerome Perkins's incarceration at the Trousdale Turner Correctional Facility (TTCC) in Hartsville, Tennessee.[1] (Doc. No. 1.) Perkins alleges that TTCC officials failed to protect him from violence by gang members, retaliated against him after he reported a gang attack and sought protection, and were deliberately indifferent to his need for medical treatment. (*Id.*) Defendants CoreCivic, Inc., Sergeant Trangla Gross, Sergeant Keenan Lister, and Sergeant Jason Holmes have moved for summary judgment on Perkins's claims against them. (Doc. No. 53), and Perkins has responded in opposition (Doc. No. 68). Considering the record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the motion for summary judgment be granted. The Magistrate Judge will further recommend that Perkins's claims against Defendant Samantha Grossman be dismissed for failure to effect service of process under Federal Rule of Civil Procedure 4(m).

---

[1]     Perkins is now housed at the South Central Correctional Facility in Clifton, Tennessee.

# I. Background

## A. Perkins's Verified Complaint

Perkins initiated this action on October 29, 2019, by filing a verified complaint under 42 U.S.C. § 1983. (Doc. No. 1.) The Court granted Perkins's motion to proceed *in forma pauperis* and screened his verified complaint (*id.*) and a supplemental filing (Doc. No. 4) under 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e (Doc. No. 6). The Court found that Perkins had stated colorable Eighth Amendment claims against CoreCivic and against Gross, Holmes, and Lister in their individual capacities for failing to protect him from gang members; a First Amendment retaliation claim against CoreCivic; and an Eighth Amendment claim against Grossman in her individual capacity for deliberate indifference to his medical needs. (Doc. Nos. 6, 7.) All other claims and defendants were dismissed. (Doc. Nos. 6, 7.) The relevant factual allegations in Perkins's verified complaint are as follows:

Perkins alleges that, on July 9, 2019, he was assaulted and robbed by gang members acting at the instruction of Gross, who "didn't like" Perkins and told him that she was "going to get [him] F up." (Doc. No. 1, PageID# 6.) The gang members threatened to kill Perkins and told him to stay out of the prison compound. (Doc. No. 1.) Perkins states that he told TTCC staff, including Warden Russell Washburn, about the assault, but the staff did not provide any medical assistance or conduct an investigation. (*Id.*) Instead, they punished him for arguing with Gross by making him sleep on the floor for three days, then placed him in a cell with a member of the Crips gang and told that gang member to "beat [Perkins's] a[**]." (*Id.* at PageID# 13.)

After the alleged assault, Perkins states that he was housed in segregation for over three-and-one-half months, in part because Lister told the Vice Lords gang that Perkins was trying to report them for his assault. (Doc. No. 1.) During that time, TTCC staff allegedly pressured Perkins to return to the prison compound and, when he repeatedly refused, wrote him up for refusing a cell

2

assignment. (*Id.*) Perkins claims that TTCC Counselor Mrs. Perkins told him that "they don't protect ex-gang member[s] or gang member[s] if [their] life [is] in danger here at [TTCC,]" that "[i]t's not [their] jobs to protect" such inmates, and that it was Perkins's "fault that it happened to [him] because [he] was once friends with those who Mrs. Gross paid off to get [him]." (*Id.* at PageID# 9.) While Perkins was in segregation, TTCC staff allegedly called him names and stole his property when he asked to be placed in protective custody, and Sergeant Lopez, Sergeant Carter, Officer Wilson, and Mrs. Roo refused to give Perkins grievance forms or threw grievance forms away, refused to give him hygiene kits, and refused to provide Perkins access to a telephone to communicate with counsel. (Doc. No. 1.)

Perkins also alleges that, on another occasion, Holmes placed a Crips gang member in Perkins's cell in order to watch Perkins and the Crips member fight, then allowed the fight to occur. (*Id.*) Perkins states that, after the fight ended, the other inmate cut him and hit him on the head and that TTCC staff refused his subsequent requests for medical care. (*Id.*) Perkins also claims that, in 2018, Grossman refused to provide medical attention when he was bitten through the skin by another inmate, which resulted in illness. (*Id.*)

### B.    Procedural Background

After screening the complaint, the Court ordered Perkins to complete and return service packets for CoreCivic, Gross, Lister, Holmes, and Grossman. (Doc. No. 7.) Perkins completed service packets for these defendants and requested that the U.S. Marshals Service attempt to serve the defendants at TTCC. (Doc. No. 9.) After receiving a letter from Perkins stating that Grossman and Lister had been terminated from their employment at TTCC (Doc. No. 10), the Court ordered Warden Raymond Byrd or another authorized representative of TTCC to file those defendants' last-known addresses under seal (Doc. No. 11). CoreCivic filed the last-known addresses under seal (Doc. No. 12), and sealed summonses were issued and provided to the U.S. Marshals Service

to attempt service (Doc. No. 14). Lister was served on September 2, 2020 (Doc. No. 26), but the summons for Grossman was returned unexecuted on October 21, 2020 (Doc. No. 37). All other defendants filed answers to Perkins's complaint (Doc. Nos. 36, 43) and the Court entered a scheduling order (Doc. No. 44). The docket reflects that, to date, Grossman has not been served and counsel has not entered an appearance on her behalf.

On July 20, 2021, CoreCivic, Gross, Lister, and Holmes filed a motion for summary judgment on Perkins's claims against them. (Doc. No. 53.) The defendants argue that summary judgment should be granted on Perkins's claims against CoreCivic because Perkins cannot show that his First and Eighth Amendment rights were violated under "an official policy or pervasive, widespread custom . . . ." (Doc. No. 53, PageID# 208.) They also argue that Gross, Lister, and Holmes are entitled to summary judgment because TTCC staff did not fail or refuse to protect Perkins, encourage violence against him, or retaliate against him, and because there is no evidence showing that Perkins was assaulted on July 9, 2019, or that he suffered any "physical injury that is more than *de minimis* . . . ." (*Id.* at PageID# 209.)

The Court ordered Perkins to file any response in opposition to the defendants' motion within twenty-one days after being served with it. (Doc. No. 61.) Perkins did not do so. In light of his incarceration and pro se status, the Court gave Perkins the opportunity to show cause by September 20, 2021, why the Court should not recommend the action be dismissed under Federal Rule of Civil Procedure 41(b) for failure to prosecute. (Doc. No. 62.) On September 15, 2021, the Court received a letter from Perkins stating that he had limited access to the law library at the South Central Correctional Facility (SCCF) because he was enrolled in SCCF's Residential Drug Abuse Program. (Doc. No. 63.)

The Court found that Perkins had adequately responded to the show-cause order and ordered him to respond to the defendants' motion for summary judgment by October 14, 2021. (Doc. No. 64.) On October 7, 2021, the Court received an unsigned, undated letter from Perkins that appeared to address arguments made in the defendants' motion for summary judgment. (Doc. No. 65.) The Court ordered Perkins to file a signed and dated response by October 29, 2021. (Doc. No. 66.) Perkins filed a motion for an extension of time to file a response (Doc. No. 67), which the Court granted (Doc. No. 69) and, on November 4, 2021, the Court received a signed and dated response to the defendants' motion for summary judgment from Perkins (Doc. No. 68). In that unsworn response, Perkins largely reiterates the factual allegations in his verified complaint, including his allegations that, at Gross's direction, gang members assaulted him on July 9, 2019; that he then entered segregation and was verbally harassed and deprived of food and showers; that Holmes placed a member of the Crips gang in Perkins's cell and watched the two fight; and that Grossman failed to provide medical treatment after Perkins was bitten by another inmate. (*Id.*)

II.     **Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

III.    **Analysis**

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a claim under § 1983, a plaintiff must show "(1) the deprivation of a right

6

secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015 (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). The defendants were acting under color of law by performing the "traditional state function" of operating a prison. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (quoting *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993)). The only remaining question is whether there is evidence in the record from which a reasonable jury could find that the defendants deprived Perkins of a federal right.

### A.    Eighth Amendment Failure to Protect

### 1.    Individual Defendants

The Eighth Amendment's prohibition of cruel and unusual punishment includes a duty of prison officials to protect incarcerated people from violence at the hands of other incarcerated people. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In order to establish liability under the Eighth Amendment for a prison official's failure to protect him, a plaintiff must demonstrate that the official was deliberately indifferent to a substantial risk of serious harm. *Id.* at 828. A determination of deliberate indifference has both subjective and objective components.

To satisfy the objective component, a plaintiff "must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). The subjective component requires the plaintiff to "show that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). Under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough

that the official should have perceived a significant risk, but did not. *Id.* An official's state of mind must be "'more blameworthy than negligence'" before liability will attach. *Woods v. Lecureaux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). Finally, in analyzing the subjective component, the court must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (first citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008); and then citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)). Under the Prison Litigation Reform Act, an incarcerated plaintiff seeking money damages must also show that he suffered a physical injury. 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* to sustain an Eighth Amendment claim. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (first citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); then citing *Luong v. Hatt*, 979 F. Supp. 481, 485–86 (N.D. Tex. 1997)).

Perkins brings failure-to-protect claims against Gross, Holmes, and Lister in their individual capacities. Perkins's verified complaint alleges that, on July 9, 2019, he was assaulted by gang members who acted at the direction of Gross. (Doc. No. 1.) He also claims that Lister told members of the Vice Lords gang that Perkins had reported them for the July 9, 2019 attack. (*Id.*) Perkins further alleges that, on an unspecified date, Holmes placed him in a cell with a person who was a member of the Crips gang and watched the two men fight without intervening. (*Id.*)

This Court's local rules require any party opposing a motion for summary judgment to "respond to each fact set forth by the movant by either: (1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). If a party does not file a timely response to a moving party's statement of material facts, "the asserted

facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn. R. 56.01(f) (failure to respond). Perkins has not responded to the defendants' statement of undisputed material facts as required by this Court's local rules; accordingly, the facts asserted in that statement are deemed undisputed for the purposes of the defendants' motion for summary judgment.

The defendants' statement of undisputed material facts asserts that (1) "Gross did not threaten Perkins, did not arrange for inmates who are gang members to assault Perkins, did not instruct inmates to threaten Perkins, and did not retaliate against Perkins for reporting an assault or any other incident[;]" (2) "Holmes did not place an inmate who was a gang member into Perkins's cell in order to watch them fight, did not refuse to intervene to stop any such fight or to remove either inmate from the cell, and did not retaliate against Perkins for reporting an assault or any other incident[;]" and (3) "Lister did not inform gang members or any other inmates that Perkins reported them for an alleged assault or any other incident, and he did not retaliate against Perkins for reporting an assault or any other incident." (Doc. No. 55, PageID# 230–31, ¶¶ 13–15.) The defendants also assert that "[t]here are no incident reports involving Perkins'[s] alleged July 9, 2019 assault[;]" "Perkins'[s] medical records do not show that he ever submitted a sick call request indicating that he needed medical attention for physical injuries from an assault on or around July 9, 2019[;]" and the responses to any relevant grievances Perkins submitted "indicate that Perkins'[s] allegations were investigated by grievance personnel at Trousdale, but that they could not be substantiated." (*Id.* at PageID# 229–30, ¶¶ 9, 10, 12.) These statements are supported by sworn declarations from Gross, Holmes, Dr. Terrence Leveck, Lister, and Washburn and by accompanying exhibits. (Doc. Nos. 56–60-8.)

Perkins has not offered "significant probative evidence" in response to the defendants' asserted undisputed facts that is sufficient to create a genuine issue of fact for trial on these claims.

9

*Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). In fact, Perkins has not offered any evidence in support of his claims beyond the allegations of his verified complaint. A "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). But, here, the allegations of Perkins's verified complaint alone are not sufficient to defeat summary judgment.

First, most of the allegations made in Perkins's verified complaint are not competent evidence to be considered at summary judgment. To constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit—and, thus, a verified complaint—"must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Courts thus evaluate whether claims in affidavits submitted at summary judgment are made from personal knowledge. *See, e.g.*, *Totman v. Louisville Jefferson Cnty. Metro. Gov't*, 391 F. App'x 454, 463 (6th Cir. 2010) (finding that plaintiff's verification "that his first amended complaint 'is true and correct to the best of [his] knowledge and belief'" "indicate[d] that the allegations of the complaint go beyond [the plaintiff's] personal knowledge and extend to matters within [his] belief" and that allegations based only on beliefs "do not meet the evidentiary standard set forth in . . . the Federal Rules of Civil Procedure" (first alteration in original)); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by" Rule 56). The burden to establish that a witness has personal knowledge of the statements made in an affidavit or verified complaint falls to the party relying on that testimony. *See Wilson v. Budco*, 762 F. Supp. 2d 1047, 1057 (E.D. Mich. 2011).

The verified complaint includes statements that "Gross told other inmates in gangs to assault [Perkins,]" Gross paid other inmates to hurt Perkins, Holmes moved a gang member into Perkins's cell and "told [him] to fight [Perkins] [two] days later[,]" Holmes observed Perkins fighting another inmate and was "disappointed" when Perkins "made [that] dude tap out and beat him up[,]" and Lister "told the Vice Lords [Perkins] was trying to tell on them on July 9, [20]19, when they robbed and assaulted [Perkins]." (Doc. No. 1, PageID# 6, 10, 14.) There is no indication that these allegations—which go to the heart of Perkins's claims against these defendants—are based on Perkins's personal knowledge. They are therefore not sufficient evidence to create genuine issues of material fact for purposes of summary judgment.

One exception is Perkins's statement that Holmes failed to intervene in a fight between Perkins and his cellmate. However, Perkins has not provided enough support for that statement to create a genuine issue of material fact in light of the evidence offered by the defendants. Perkins states in his verified complaint that Holmes "put a gang member of the Crips in my cell and watch[ed] us fight and didn't stop the fight and when he ask[ed] to be moved[, Holmes] walked out [of] the pod . . . [a]nd didn't move my celly out . . . [b]ut left us in the cell." (Doc. No. 1, PageID# 10.) Although this statement is made from personal knowledge and may be considered under Rule 56(c), Perkins offers nothing more to support it or to elaborate upon its minimal assertions at summary judgment. Standing alone, Perkins's statement does not provide "concrete evidence from which a reasonable juror could return a verdict in his favor" on the objective or subjective components of an Eighth Amendment claim. *Anderson*, 477 U.S. at 256; s*ee also Reedy v. West*, 988 F.3d 907, 913–14 (6th Cir. 2021) (holding that, where the record did not contain specific supporting facts showing a substantial risk of harm, assertions in verified complaint that plaintiff told corrections officers that he feared for his safety, was threatened by his cellmate, and

wished to be moved were insufficient to support objective prong of Eighth Amendment failure-to-protect claim).

Because Perkins has not offered sufficient evidence for a reasonable jury to find in his favor on his claims against Gross, Holmes, and Lister, those defendants are entitled to summary judgment.[2]

### 2. CoreCivic

Perkins alleges that CoreCivic is liable for violations of his Eighth Amendment rights because TTCC officers' failure to protect him was the result of a CoreCivic policy or custom of refusing to protect current or former gang members from violence. (Doc. No. 1.) The Supreme

---

[2]    Summary judgment is also warranted on Perkins's claims against Gross because there is no genuine dispute of fact that Perkins did not suffer a physical injury as a result of the alleged July 9, 2019 attack. In the Eighth Amendment context, "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn ex rel. Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. 1994). Under the Prison Litigation Reform Act , a lawsuit brought by an incarcerated person requires a "physical injury" in order to permit recovery. 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* to sustain an Eighth Amendment claim. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (first citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); and then citing *Luong v. Hatt*, 979 F. Supp. 481, 485–86 (N.D. Tex. 1997)).

The defendants' statement of undisputed material facts asserts that "Perkins'[s] medical records do not show that he ever submitted a sick call request indicating that he needed medical attention for physical injuries from an assault on or around July 9, 2019." (Doc. No. 55, PageID# 229, ¶ 10.) The defendants support that statement with a citation to the declaration of Dr. Leveck, who states that he "ha[s] reviewed Perkins's medical records from Trousdale, and [he] did not see any evidence that Perkins sustained physical injuries from an assault on or around July 9, 2019. [He] also did not see any sick call requests that Perkins submitted on or around July 9, 2019." (Doc. No. 58, PageID# 241, ¶ 4.) This fact is undisputed for purposes of summary judgment. M.D. Tenn. R. 56.01(g) (failure to respond).

Perkins also has not offered "significant probative evidence" to rebut it. *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248). Perkins's verified complaint includes conclusory statements that he was assaulted and experienced pain and suffering. Although Perkins alleges that he "received no medical attention" after being assaulted on July 9, 2019 (Doc. No. 1, PageID# 8), his verified complaint does not state how he was injured and he has introduced no evidence of any injuries he sustained. The minimal and conclusory assertions of his verified complaint are insufficient to establish a genuine dispute of material fact on this issue.

Court has held that a government body or private entity performing a government function "can be found liable under § 1983 . . . where the [entity] *itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978)). The overarching question in resolving such claims is "whether there is a direct causal link between [the entity's] policy or custom and the alleged constitutional deprivation." *Id.*

Courts in this circuit engage in a two-pronged inquiry when considering such claims under § 1983. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (quoting *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004)); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505 (6th Cir. 1996). The court first asks whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law. *Powers*, 501 F.3d at 607 (first citing *Cash*, 388 F.3d at 542; and then citing *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003)). Second, the court asks whether the defendant entity is "responsible for that deprivation." *Cash*, 388 F.3d at 542 (citing *Doe*, 103 F.3d at 507); *cf. Powers*, 501 F.3d at 607.

Under the first prong of the analysis, courts must consider whether the plaintiff has asserted "rights [that] are federally protected such that, if proven, § 1983 will provide relief for their infringement." *Powers*, 501 F.3d at 607; *see also Cash*, 388 F.3d at 542 ("First, the court must determine whether the plaintiffs have asserted the deprivation of a constitutional right." (citing *Doe*, 103 F.3d at 505)). Importantly, this prong asks the court to "examin[e] the nature of the right claimed to have been infringed upon" and not to determine the merits of the claim. *Doe*, 103 F.3d at 506; *see also Cash*, 388 F.3d at 542 ("The threshold question is 'whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property.'"). Perkins has a constitutionally protected right under the Eighth Amendment to be free from violence at the hands

of other incarcerated people. *Farmer*, 511 U.S. at 833. He thus bases his claims against CoreCivic on a constitutionally protected right, satisfying the inquiry's first prong.

His claims fail, however, on the second prong of the inquiry, at which plaintiffs "must identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may prove the existence of a policy or custom that is actionable under Section 1983 in four ways:

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted). "The Sixth Circuit applies specific inquiries for . . . claims based on each theory to determine whether plaintiffs have identified a custom or policy, connected the policy to the defendant . . . entity, and shown that the custom or policy was the moving force behind the alleged injury as required." *Whitworth v. CoreCivic, Inc.*, No. 3:17-cv-01121, 2019 WL 1427934, at *13 (M.D. Tenn. Mar. 29, 2019); *See also Connick v. Thompson*, 563 U.S. 51, 61–63 (2011) (articulating standard for failure-to-train theory); *Thomas*, 398 F.3d at 429 (articulating four-part inquiry for claims based on inaction theory)

Perkins alleges that Mrs. Perkins told him that TTCC staff "don't protect ex-gang member[s] or gang member[s] if [their] life [is] in danger here at [TTCC,]" that "[i]t's not [their] jobs to protect" such inmates, and that it was Perkins's "fault that it happened to [him] because [he] was once friends with those who Mrs. Gross paid off to get [him]." (Doc. No. 1, PageID# 9.) He also alleges that he wrote to Washburn after the July 9, 2019 attack but did not receive any help

in response. (Doc. No. 1.) These statements can be broadly construed as allegations that CoreCivic has "a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429.

In its statement of undisputed facts, CoreCivic asserts that

> CoreCivic policies and customs require that security personnel prioritize the protection and safety of inmates from, among other things, assault, harassment, personal abuse, and verbal abuse. CoreCivic policies and customs also prohibit CoreCivic employees from retaliating against inmates or punishing them for reporting an assault or threat of an assault against themselves or another inmate. Relevant policies and customs at Trousdale are designed and intended to ensure that all inmates receive protection from violence perpetrated by others.

(Doc. No. 55, PageID# 227, ¶ 1.) CoreCivic supports this assertion with the sworn declaration of former TTCC Warden Washburn, who states that

> [w]hen CoreCivic employees receive information indicating that an inmate could be in danger, an immediate inquiry will be made concerning the facts of the situation to determine whether the alleged threats are substantiated and whether immediate protection is needed. CoreCivic requires an investigation into the information received because of the number of instances of inmates reporting threats from other inmates, which often are unsubstantiated. Furthermore, CoreCivic policies require that employees fully and immediately document all information received regarding threats to inmates incarcerated at Trousdale.

(Doc. No. 60, PageID# 249, ¶ 5.) Washburn asserts that the TTCC grievance committee investigated Perkins's allegations regarding the July 9, 2019 assault, but that those allegations "could not be substantiated." (*Id.* at ¶ 13 (citing Doc. No. 60-8).)

CoreCivic also filed copies of its relevant policies, which contain several provisions related to Perkins's claims. Policy 14-4.4, Inmate/Resident Rights, states that CoreCivic's policy is "to ensure that all inmates/residents are afforded the following rights . . . Protection From Personal Abuse, Verbal Abuse, Personal Injury, Disease, Corporal Punishment, Property Damage and Harassment . . . ." (Doc. No. 60-1, PageID# 252–53.) Policy 404.09, Protective Services, states that "[a]n appropriate level of protection shall be provided to inmates who have been determined to require such protection." (Doc. No. 60-2, PageID# 255.) CoreCivic's Code of Ethics and

Business Conduct, Standards of Conduct instructs employees not to "directly or indirectly (such as through another employee or resident), harass, taunt or otherwise engage in abusive or undue negative treatment of residents[;]"to "[s]eek to protect residents from physical or sexual abuse by other residents[;]" and, "[i]f you become aware of a threat of physical or sexual abuse, promptly report this knowledge to an appropriate supervisor for immediate investigation and action or, if the threat is imminent, take action to prevent such abuse." (Doc. No. 60-7, PageID# 333–34, ¶¶ 6, 14.)

Because CoreCivic has offered evidence establishing that it does not have "a custom of tolerance or acquiescence of federal rights violations," *Thomas*, 398 F.3d at 429, Perkins must present "'significant probative evidence'" in rebuttal to survive summary judgment. *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248); *see also Jones v. Warden, Ross Corr. Inst.*, No. 2:11-cv-871, 2013 WL 3976667, at *5 (S.D. Ohio Aug. 2, 2013). He has not done so. The allegations in Perkins's verified complaint, without additional factual support, do not sufficiently allege that CoreCivic policy or custom was the moving force behind Perkins's alleged injuries so as to constitute "'significant probative evidence'" of an unconstitutional policy or custom. *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248). The Court noted when it screened Perkins's verified complaint that his "allegations adequately state[d] an Eighth Amendment failure-to-protect claim against CoreCivic" at the screening stage, where a "'lower burden'" applies, but that Perkins would "bear the burden of supporting his allegations with additional evidence regarding CoreCivic policy or custom as this case progresses . . . ." (Doc. No. 6, PageID# 41 (quoting *Vick v. CoreCivic*, 329 F. Supp. 3d 426, 440, 446 (M.D. Tenn. 2018)).) Perkins has not produced any such evidence, and the allegations in his verified complaint are not sufficient to create a genuine

dispute of fact regarding the existence of a CoreCivic custom that directly caused Perkins harm. CoreCivic is entitled to summary judgment on Perkins's Eighth Amendment claim.

### B.     First Amendment Retaliation

Perkins also brings a First Amendment retaliation claim against CoreCivic, alleging that prison officials subjected him to harsh treatment in retaliation for reporting the July 9, 2019 attack and seeking protection from other gang violence. (Doc. No. 1.) To succeed on his retaliation claim, Perkins must show that

> (1) [he] engaged in constitutionally protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Because Perkins brings this claim only against CoreCivic, he must also show that CoreCivic "*itself* cause[d] the constitutional violation at issue" through execution of its own policies or customs. *City of Canton*, 489 U.S. at 385 (citing *Monell*, 436 U.S. at 691).

> It is undisputed for purposes of this summary judgment motion that

> CoreCivic policies and customs . . . prohibit CoreCivic employees from retaliating against inmates or punishing them for reporting an assault or threat of an assault against themselves or another inmate. Relevant policies and customs at Trousdale are designed and intended to ensure that all inmates receive protection from violence perpetrated by others.

(Doc. No. 55, PageID# 227, ¶ 1.) This statement is supported by Washburn's declaration and copies of the relevant CoreCivic policies and CoreCivic's inmate grievance procedure, which provides that "every inmate has the right to utilize the grievance procedure without fear of reprisal. All grievances shall be considered in a fair and impartial manner and resolved at the lowest possible level in the grievance procedure[,]" (Doc. No. 60-4, PageID# 272.) CoreCivic thus has carried its initial burden to show that there is no dispute of material fact that it does not have a

policy or custom of "retaliating against inmates or punishing them for reporting an assault or threat of an assault against themselves or another inmate." (Doc. No. 55, PageID# 227, ¶ 1.)

Perkins's verified complaint alleges that various TTCC staff members took adverse actions against him after he reported the July 9, 2019 attack and sought protection, including calling him names, taking his property and legal materials, and making him sleep on the floor of the intake office. (Doc. No. 1.) The individual actions Perkins alleges, without additional factual support, do not create a genuine issue of material fact that Perkins was retaliated against by CoreCivic "officials . . . with final decision-making authority" or that CoreCivic had "a policy of inadequate training or supervision" or "a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429; *see also Billingsley v. Shelby Cnty. Dep't of Corr.*, No. 02-2920 B, 2005 WL 2659105, at *5 (W.D. Tenn. Oct. 17, 2005) (granting summary judgment for municipal defendant where plaintiff's "contentions reflect[ed] only the misdeeds of the individual officers involved, which are insufficient to impose liability on the County"). Accordingly, CoreCivic is entitled to summary judgment on Perkins's First Amendment retaliation claim.

### C.    Service of Process on Samantha Grossman

Perkins's claims against Defendant Grossman should be dismissed under Federal Rule of Civil Procedure 4(m) because Perkins has not effected service on Grossman over the two years that this action has been pending. Federal Rule of Civil Procedure 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (explaining that Rule 4(m) "explicitly provides that the court

shall allow additional time if there is good cause for the plaintiff's failure to effect service . . . and

authorizes the court to [grant relief] . . . even if there is no good cause shown"); *see also Henderson*

*v. United States*, 517 U.S. 654, 662–63 (1996); *DeVane v. Hannah*, No. 3:11-cv-00389, 2011 WL

5916433, at *2 (M.D. Tenn. Nov. 28, 2011). Otherwise, the language of Rule 4(m) mandates

dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d

217, 219 & n.3 (6th Cir. 1996).

When a plaintiff proceeds *in forma pauperis*, "[t]he officers of the court shall issue and

serve all process, and perform all duties in such cases." 28 U.S.C. § 1915(d). Rule 4(c) further

provides that "[t]he court must" "order that service be made by a United States marshal or deputy

marshal or by a person specially appointed by the court" "if the plaintiff is authorized to proceed

in forma pauperis under 28 U.S.C. § 1915 . . ." Fed. R. Civ. P. 4(c)(3).

> Together, Rule 4(c)[(3)] and 28 U.S.C. § 1915([d]) stand for the proposition that
> when a plaintiff is proceeding *in forma pauperis* the court is obligated to issue
> plaintiff's process to a United States Marshal who must in turn effectuate service
> upon the defendants, thereby relieving a plaintiff of the burden to serve process
> once reasonable steps have been taken to identify for the court the defendants
> named in the complaint.

*Byrd*, 94 F.3d at 219 (emphasis added). Courts in this circuit consider the *in forma pauperis*

plaintiff's conduct and the totality of the circumstances in determining whether good cause exists

to extend the Rule 4(m) deadline.

Perkins initially provided the address of Grossman's last known employment at TTCC with

his completed service packets. The Clerk of Court issued a summons to Grossman at that address

(Doc. No. 9) that was returned unexecuted with a notation that Grossman was no longer employed

there. (Doc. No. 16). When Perkins informed the Court on August 6, 2020, that he did not have a

current address for Grossman (Doc. No. 10), the Court ordered TTCC Warden Byrd or another

authorized representative of TTCC to file Grossman's last known address under seal (Doc. No. 11).

CoreCivic filed a sealed notice of Grossman's last known address (Doc. No. 12), and, on August 27, 2020, the Clerk of Court issued a sealed summons and forwarded it to the U.S. Marshals Service to effect service on Grossman (Doc. Nos. 13, 14). The Marshals Service attempted to serve Grossman at the address via certified mail but returned the summons unexecuted after the summons and complaint were returned to sender as unclaimed and unable to forward. (Doc. No. 37.) The docket reflects that, to date, Grossman has not been served or appeared in this action, and Perkins has not taken any further steps to serve Grossman or otherwise addressed service since the second summons was returned unexecuted.

The Marshals Service has attempted to serve Grossman on Perkins's behalf at two addresses. While Perkins initially took proactive action to inform the Court that Grossman was no longer employed at TTCC, over a year has passed since the last summons issued to Grossman was returned unexecuted and the docket reflects that Perkins has not made any further attempts to effect service on Grossman. Perkins has not asked the Court to extend the Rule 4(m) deadline and, considering the totality of the circumstances, the Court does not find good cause to do so on its own initiative. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 941 (E.D. Mich. 2004) (finding that a pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend the Rule 4(m) deadline where the plaintiff "remained silent after being put on notice that . . . Defendants had not been served"); *see also Freeman v. Collins*, No. 2:08-cv-00071, 2011 WL 4914873, at *5 (S.D. Ohio Aug. 15, 2011) (finding that pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend Rule 4(m) deadline where he "took no action to cure the lack of service for a significant period . . .").

**IV.     Recommendation**

For the foregoing reasons, the Magistrate Judge RECOMMENDS that CoreCivic, Gross, Holmes, and Lister's motion for summary judgment (Doc. No. 53) be GRANTED, that summary judgment be entered in those defendants' favor, and that Perkins's claims against Grossman be DISMISSED WITHOUT PREJUDICE for failure to effect service under Federal Rule of Civil Procedure 4(m).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 31st day of January, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge